UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/8/2021
```

CONNIE AVARAS, individually and on behalf of
her minor child, A.A.,

                                    Plaintiff,

          -against-

CLARKSTOWN CENTRAL SCHOOL DISTRICT,
BOARD OF EDUCATION FOR THE
CLARKSTOWN CENTRAL SCHOOL DISTRICT,
and NEW YORK STATE DEPARTMENT OF
EDUCATION,

                                    Defendants.

No. 15 CIV 2042 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

This matter comes before the Court on Plaintiff Connie Avaras' Motion to Dismiss Complaint-in-Intervention of Gina DeCrescenzo, P.C. (ECF No. 127.) Plaintiff Connie Avaras ("Plaintiff"), individually and as parent of A.A., brings this action *pro se* against the Clarkstown Central School District, the Board of Education for the Clarkstown Central School District, and the New York State Department of Education (collectively, the "Defendants") pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794, and 42 U.S.C. § 1983 ("Section 1983"). On August 24, 2020, Intervenor-Plaintiff Gina DeCrescenzo, P.C. ("Intervenor") filed a Complaint-in-Intervention seeking to assert a charging lien pursuant to N.Y. Judicial Law § 475 upon Plaintiff's cause of action. (Complaint in Intervention ("Compl."), ECF No. 123.)

For the following reasons, Plaintiff's motion to dismiss is DENIED.

## BACKGROUND

The following facts are taken from Intervenor's Complaint-in-Intervention and are accepted as true and construed in the light most favorable to the non-movant Intervenor for the purposes of this motion.

In or about March 2013, Plaintiff retained Intervenor for the purposes of commencing an impartial due process hearing ("Impartial Hearing") pursuant to IDEA to seek relief for tuition and related expenses for her child A.A.'s education for pre-2012–2013 school years, and the 2012–2013, 2013–2014, and 2014–2015 school years.   (Compl. ¶ 8.)   Plaintiff challenged the Defendants' conduct with respect to A.A.'s education, alleging the school district failed to provide a free and appropriate public education as required by IDEA which resulted in Plaintiff unilaterally placing A.A. at Hawk Meadow Montessori School ("Hawk Meadow").   Plaintiff and Intervenor had a written retainer agreement which provided that the work of the principal attorney Gina DeCrescenzo would be compensated by Plaintiff at the rate of $350 per hour, that other staff members of Intervenor would be compensated within a range of hourly rates stated in the agreement, and that bills would be provided at the end of each calendar month with payments due within fifteen days of their issuance. (*Id.* ¶¶ 9–12.)  The retainer agreement provided that balances over thirty days past-due would be charged interest at one percent per month.   (*Id.* ¶ 13.) Intervenor's representation of Plaintiff included preparing and filing a "Due Process Complaint," and preparing and conducting the Impartial Hearing, which included appearances at eighteen hearing dates before a hearing officer ("Impartial Hearing Officer").   (*Id.* ¶¶ 14–17.)   On September 8, 2014, the Impartial Hearing Officer denied all of Plaintiff's claims for relief.  (*Id.* ¶ 18.)  Specifically, the Impartial Hearing Officer found that "Free Appropriate Public Education"

was not afforded to A.A. for the 2013–2014 school year but no relief was awarded for that school year because the private placement at Hawk Meadow was not appropriate. (*Id.* ¶ 19.)

On or about October 13, 2014[1], Plaintiff and Intervenor entered into a second written retainer agreement for the purposes of retaining the firm to appeal the Impartial Hearing Officer's decision to the Office of State Review. (*Id.* ¶ 21.) The second retainer agreement contained the same compensation terms as the first retainer agreement. (*Id.* ¶ 22.) Intervenor's representation of Plaintiff in the appeal included preparing and submitting filings, which included a Notice of Petition, Petition, and a Memorandum of Law, to the Office of State Review. (*Id.* ¶¶ 23–24.) On November 14, 2014, the Office of State Review upheld the Impartial Hearing Officer's decision in all respects and denied Plaintiff's claims for relief. (*Id.* ¶ 27.)

Following the November 14, 2014 decision, Intervenor sent a letter to Plaintiff advising her of the deadline to seek judicial review of the Office of State Review decision and of the closing of the firm's case file for A.A.'s matters. (*Id.* ¶ 28.) Intervenor's representation "came naturally to an end" after the Office of State Review case ended. (*Id.* ¶ 29.) Plaintiff has accumulated past-due legal fees to Intervenor beginning partway through the Impartial Hearing. (*Id.* ¶ 30.) Intervenor sent Plaintiff multiple reminders of unpaid bills and Plaintiff on several occasions orally acknowledged the unpaid fees and stated she would pay in full eventually. (*Id.* ¶¶ 33–34.)

On March 12, 2015, Plaintiff, individually and as parent of A.A., brought this action *pro se* against the Defendants pursuant to IDEA, the ADA, the RA, and Section 1983. (ECF No. 2.) Predominantly, Plaintiff sought judicial review of a decision made by a State Review Officer, who affirmed the decision of the Impartial Hearing Officer denying Plaintiff's request for tuition reimbursement and other expenses associated with a private school placement after finding that

---

[1] The Complaint-in-Intervention dates the second retainer agreement as October 13, 2020, but that is likely a typo on the year. (*See* Compl. ¶ 21.)

the District offered A.A. a free and appropriate public education for the 2012–2013 school year and that, although the District did not offer such an education for the 2013–2014 school year, her unilateral alternative placement for A.A. was also inadequate.

On July 17, 2017, this Court issued a decision that reversed the Office of State Review in several respects, holding that A.A. was denied a "Free Appropriate Public Education" for the 2012–2013 and 2013–2014 school years and that Hawk Meadow was an appropriate placement. (ECF No. 75.)  The Court remanded the case to the Impartial Hearing Officer to determine whether the equities favored tuition reimbursement for those school years.  (*Id.*)

On September 1, 2017, Intervenor mailed a "Notice of Attorneys' Charging Lien" dated August 31, 2017 to Plaintiff and to counsel for Defendants.  (Compl. ¶ 37.)  The notice stated: "Please take notice that my office asserts a charging lien pursuant to Judiciary Law § 475 against any proceeds of this proceeding in favor of any of the Petitioners."  (*Id.* ¶ 38.)  On November 17, 2017, Intervenor mailed a second notice of lien to counsel for Plaintiff and counsel for Defendants. (*Id.* ¶ 41.)  The second notice stated: "Please take notice that my office asserts a charging lien pursuant to Judiciary Law § 475 against any proceeds resulting from the cause of action asserted in the . . . administrative proceeding, in whatever hands they may come. . . ."  (*Id.* ¶ 42.)

On September 29, 2017, the Impartial Hearing Officer issued a decision in which he found that the equities did not favor Plaintiff for either school year and denied all claims for relief.  (*Id.* ¶ 40.)  On December 13, 2017, the Office of State Review reversed only a portion of the Impartial Hearing Officer's September 29, 2017 decision by finding that the equities favored Plaintiff for the 2012–2013 school year.  (*Id.* ¶ 50.)  The Office of State Review affirmed the other aspects of the Impartial Hearing Officer's September 29, 2017 decision.  (*Id.*)  In November 2019, before this Court, Defendants Clarkstown Central School Board and the Board of Education for

Clarkstown Central School Board challenged the portion of the December 13, 2017 decision that found the equities favored Plaintiff for the 2012–2013 school year while Plaintiff, represented by counsel, challenged the portion that found the equities did not favor her for the 2013–2014 school year.  (*Id.* ¶ 51; *See also* ECF No. 110.)

On October 9, 2020, Intervenor moved to intervene in the instant action and filed a Complaint-in-Intervention which sought to assert a charging lien pursuant to New York Judiciary Law § 475.  As of the date of the Complaint-in-Intervention, there is a past-due balance of $67,762.60.  (*Id.* ¶ 49.)  Intervenor prays that this Court (1) declare Intervenor has a charging lien on the cause of action asserted by Plaintiff in this action; (2) declare that the amount of the lien is $67,762.60 (or higher with accrual of interest); (3) provide for post-judgment interest at the amount of the lien; and (4) enforce the charging lien.  (*Id.* at 9–10.)  Plaintiff moved to dismiss the Complaint-in-Intervention and to reject the charging lien as invalid.  (ECF No. 127.)  Plaintiff submitted a memorandum of law and a declaration in support of her motion.  (ECF Nos. 128 & 129.)  Intervenor opposed the motion and filed an affidavit of Linda Sellati, a bookkeeper for Intervenor, in support of her opposition.  (ECF Nos. 132–133.)  Plaintiff submitted a reply memorandum of law in response.  (ECF No. 130.)

On October 8, 2021, Plaintiff and Defendants submitted a settlement stipulation to globally settle the instant action and two other actions between the Parties before this Court, Case No. 15-cv-9679 and Case No. 18-cv-6964.  (ECF No. 136.)  The Parties stipulated to settle the instant action for $100,000 with $20,000 of the settlement funds paid to Plaintiff and $80,000 withheld pending the final resolution of Intervenor's assertion of the charging lien.  (*Id.*)  On October 29, 2021, this Court approved of the global settlement stipulation.  (ECF No. 140.)

**LEGAL STANDARD**

### I.     FED. R. CIV. P. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678 (quoting *Twombly*, 550 U.S. at 555).  The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**DISCUSSION**

Plaintiff seeks dismissal of Intervenor's Complaint-in-Intervention on the grounds that (i) the charging lien is inapplicable to the proceeds of the federal litigation, (ii) Intervenor is not an "attorney of record" in the instant action, (ii) Intervenor's services did not contribute to the creation of the settlement fund, and (iv) the Complaint-in-Intervention failed to allege the charging lien is fair and reasonable.  (Memorandum of Law in Support of Plaintiff's Motion to Dismiss the Complaint in Intervention and Reject as Invalid the Charging Lien ("Pl.'s Mem."), ECF No. 129.)

Intervenor responds that (i) the charging lien applies to the cause of action in this civil action, (ii) that her appearance in the administrative record was sufficient under New York Judiciary Law § 475, (iii) that the work done in the underlying administrative proceedings contributed to Plaintiff's settlement proceeds, and (iv) that the Complaint-in-Intervention adequately pleads existence of a charging lien.  (Intervenor-Plaintiff Gina DeCrescenzo, P.C.'s Memorandum of Law in Opposition to Plaintiff Connie Avaras' Motion to Dismiss ("Int.'s Opp."), ECF No. 132.)

Below, the Court considers the validity of the charging lien and, if valid, the fair and reasonable amount of the lien that is enforceable against Plaintiff.

## I.     Validity Of Charging Lien

The Court first turns to the issue of whether there is a valid charging lien on the instant civil action.

"A charging lien is a security interest in the favorable result of litigation, giving the attorney [an] equitable ownership interest in the client's cause of action and ensuring that the attorney can collect [her] fee from the fund [she] has created for that purpose on behalf of the client."  *Charnow v. Charnow*, 134 A.D.3d 875, 876 (2d Dep't 2015) (citation omitted).  New York Judiciary Law § 475 ("Section 475") "governs attorneys' charging liens in federal courts sitting in New York." *Itar-Tass Russ. News Agency v. Russ. Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998).  Section 475 provides:

> From the commencement of an action, special or other proceeding in any court or before a state, municipal or federal department . . ., the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counter claim, which attaches to a verdict, report, determination, decision, award, settlement,  judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination.  The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Jud. § 475.  The charging lien exists "[f]rom the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor," *id.*, but it "only attaches when proceeds from an identifiable fund are created by an attorney's own efforts in the action or proceeding," *In re Air Crash at Belle Harbor*, No. 02-cv-4758 (RWS), 2006 WL 3247675, at *2 (S.D.N.Y. Nov. 9, 2006).

For the reasons set forth below, the Court finds that Intervenor has a valid charging lien on the instant action.

### a.  Whether The Charging Lien Is Limited By The Notice Of Lien

Plaintiff argues that the terms of the August 13, 2017 notice of lien issued by Intervenor indicates that the lien applies only to the administrative proceeding because the notice specifies only that a lien attaches to "this proceeding."  (Pl.'s Mem. at 9.)  Intervenor responds that charging liens under Section 475 are not contingent on notices, that the August 13, 2017 notice of lien does not limit the lien to administrative proceeding, and that a second notice dated November 17, 2017 makes clear the lien extends to the instant action.  (Int.'s Opp. at 5.)  The Court agrees with Intervenor that Section 475 charging liens are not contingent on notices.  Rather, "[u]nder Judiciary Law § 475, a charging lien automatically comes into existence, without notice or filing, upon commencement of the action," *Resnick v. Resnick*, 24 A.D.3d 238, 239 (1st Dep't 2005), and "attaches to the client's cause of action, and any recovery thereon . . ."  *Neimark v. Martin*, 7 A.D.2d 945, 945 (2d Dept. 1959).  Since the existence and attachment of a Section 475 lien is not contingent on notice, the Parties' dispute over the interpretation of the August 13, 2017 and November 2017 notices is irrelevant.  More importantly, Section 475 specifies that a charging lien is upon a client's causes of actions, not upon a particular legal proceeding to which an attorney provided services.  Thus, the relevant issue is not whether Intervenor properly notified Plaintiff of

the lien, but rather whether Intervenor has a proper lien under Section 475 such that it attaches to the proceeds of Plaintiff's IDEA claims regarding A.A.'s tuition for the 2012–2013 and 2013–2014 school years.

**b. Whether Intervenor Is An "Attorney Of Record"**

As the Second Circuit and other courts applying New York law have made clear, a charging lien "is for the benefit of an 'attorney of record' only." *Itar-Tass*, 140 F.3d at 450 (collecting cases). Thus, "before an attorney can be granted a lien pursuant to [Section 475], he or she must have appeared for the client by 'participating in a legal proceeding on the client's behalf or by having his [or her] name affixed to the pleadings, motions, records, briefs, or other papers submitted in the matter.'" *Picciolo v. State*, 287 A.D.2d 721, 722 (2d Dep't 2001) (quoting *Cataldo v. Budget Rent A Car Corp.*, 226 A.D.2d 574, 574 (2d Dep't 1996)). An attorney of record who has been discharged by her client "maintains . . . her right to enforce the statutory lien," so long as her "representation terminates upon mutual consent, and there has been no misconduct, no discharge for just cause, and no unjustified abandonment by the attorney." *CPMI, Inc. v. Kolaj*, 137 A.D.3d 953, 955–56 (2d Dep't 2016) (citation omitted); *accord Klein v. Eubank*, 87 N.Y.2d 459, 464 (1996). Thus, "an attorney need not be counsel of record at the time the judgment or settlement fund is created in order to be entitled to the lien afforded by Judiciary Law § 475," *Klein*, 87 N.Y.2d at 462.

As an initial matter, Plaintiff argues that Intervenor does not qualify as an "attorney of record" under Section 475. (Pl.'s Mem at 9–13.) Specifically, Plaintiff notes that Intervenor "never appeared in the instant action" and that her "only involvement was in connection with the administrative proceedings before the IHO and the SRO." (*Id.* at 10–11.) Intervenor does not dispute that she has not made an appearance in the instant action. (Int.'s Opp. at 7.) Instead, she

maintains that she satisfies the requirements of Section 475 by appearing in the underlying administrative proceedings.  (*Id.*)

"Under very specific circumstances, courts may grant charging liens on proceeds in actions where the moving attorney did not render legal services where a subsequent action 'in logical sequence' involved the same claims."  *Ramgoolie v. Ramgoolie*, No. 16-CV-3345 (VEC)(SN), 2020 WL 1989292, at *5 (S.D.N.Y. Apr. 27, 2020) (citing *Sellick v. Consol. Edison Co. of New York, Inc.*, 15-cv-9082 (RJS), 2017 WL 1133443, at *5 (S.D.N.Y. Mar. 23, 2017)).  Plaintiff argues that the logical sequence is a "narrow exception" that is inapplicable to Intervenor because her "performance led to a complete loss" in the administrative proceedings.  (Pl.'s Mem. at 12–13.)  Relying on *Neimark v. Martin*, 7 A.D.2d 945 (N.Y. App. Div. 1959), Plaintiff argues that the logical sequence exception to the attorney of record requirement only applies where there was success in the underlying proceeding and that "there is no 'logical sequence' between the loss in the administrative proceeding and this litigation."  (Pl.'s Mem. at 13.)  The Court is not persuaded by this.  In *Sellick v. Consol. Edison, Co. of New York, Inc.*, a court in this district granted a Section 475 charging lien over attorneys' fees collected out of settlement of a federal lawsuit after finding the "federal suit was of a logical sequence from EEOC proceeding, since a Title VII plaintiff 'must first exhaust [her] administrative remedies by 'filing a timely charge with the EEOC or with a [s]tate or local agency with authority to grant or seek relief from such practice.'"  No. 15-cv-9082 (RJS), 2017 WL 1133443, at *5 (citing *Neimark*, 7 A.D.2d at 934 and *Roth v. Farmingdle Pub. Sch. Dist.*, No. 14-cv-6668, 2017 WL 395211, at *9 (E.D.N.Y. Jan. 30, 2017)).  This Court agrees with the reasoning of the *Sellick* court.  Similarly, the instant action is in "logical sequence" with the underlying administrative proceedings before the Impartial Hearing Officer and the State Review Officer.  Pursuant to N.Y. Educ. Law § 4404, any determination by an Impartial Hearing

Officer shall be reviewed by a State Review Officer, and "any final determination or order of a state review officer . . . may only be reviewed in a proceeding brought in the supreme court . . . or in the United States district court."  N.Y. Educ. Law § 4404.  To bring the instant action, Plaintiff must first have exhausted her administrative remedies by asserting her claims before the Impartial Hearing Officer, and then seeking review by the Office of State Review.  The doctrine of exhaustion of administrative remedies does not require a party to have been successful in the underlying proceedings—rather, it requires that parties to first pursue the available administrative remedies.  As such, the Court finds that the instant action is "in logical sequence" to the underlying proceedings before the Impartial Hearing Officer and the State Review Officer.

Intervenor has sufficiently pled that she is an attorney of record in the underlying administrative proceedings.  Under Section 475, an attorney "must have appeared for the client by participating in a legal proceeding on the client's behalf or by having [her] name affixed to pleadings, motions, records, briefs or other papers submitted in the matter."  *Picciolo v. State*, 287 A.D.2d 721, 722 (2d Dep't 2001).   During the Impartial Hearing, Intervenor prepared and filed a "Due Process Complaint," and appeared at eighteen hearing dates for the matter.  (Compl. ¶¶ 14, 16–17.)  At the Office of State Review, Intervenor prepared and filed a pleading and other papers. (*Id.* ¶ 23.)  The Court finds that Intervenor sufficiently meets the attorney of record requirement of Section 475.[2]

---

[2] Although Plaintiff repeats her dissatisfaction of the unfavorable results from Intervenor's representation, the Parties do not assert that Intervenor was discharged by Plaintiff for cause.  Intervenor pleads that its representation "came naturally to an end after the Office of State Review Case." (Compl. ¶ 29.)  "A charging lien is only payable when an attorney is discharged without cause as was the case here."  *G.S. v. B.S.*, 63 Misc. 3d 1202(A) (N.Y. Sup. Ct. 2019).

### c. Whether Intervenor's Efforts Contributed To Settlement

Plaintiff contests Intervenor's efforts contributed to the creation of the settlement fund. Plaintiff asserts the instant action was "virtually immaterial" to the global settlement analysis between Plaintiff and Defendants because the driving force of the settlement was the pendency law arguments in the other two cases between the Parties to which Intervenor had no role in formulating. (Pl.'s Mem. at 13–18.)  Plaintiff further claims that rather than contributing to the instant action, Intervenor instead prejudiced her chances of success on her causes of action through Intervenor's unfruitful performance in the underlying administrative proceedings. (*Id.* at 18–20.)  Intervenor maintains her representation was worthwhile and effective because it led to the creation of an administrative record which entitled Plaintiff to relief, and, even if Intervenor's representation was flawed, the fruitfulness of the representation does not extinguish the lien. (Int.'s Opp. at 13–10.)

The Court finds Plaintiff's explanation of the behind-the-scenes decisions for the global settlement to be unavailing.  The text of Section 475 is clear that an attorney has a "lien upon [her] client's *cause of action . . .*, which attaches to a . . . settlement."  N.Y. Jud. Law § 475; *see also Sellick*, 2017 WL 1133443, at *4.  Intervenor represented Plaintiff before both the Impartial Hearing Officer and the Office of State Review in seeking relief regarding A.A.'s education for school years from 2012 through 2015.  Thus, Intervenor's lien was upon Plaintiff's claims for relief for tuition and other expenses associated with A.A.'s education during those school years, including for the 2012–2013 and 2014–2015 school years.  Regardless of how the settlement decisions were made, the Parties have allocated $100,000 of the global settlement to dismiss the instant action. (ECF No. 140.)  This settlement amount, which extinguishes the causes of action in the instant action, is subject to the lien.  *See In re Shirley Duke Assocs.*, 611 F.2d 15, 28 (2d Cir.

1979) ("In the event of settlement, the attorney's lien attaches to the fund representing the cause of action extinguished by the settlement.")  Thus, the Court finds that Intervenor has a valid Section 475 charging lien upon the settlement funds of the instant action.

As to Plaintiff's assertions that Intervenor prejudiced Plaintiff's chances of success, the Court considers such arguments below in determining the fair and reasonable amount of the lien to be enforced.

## II.    Amount Of Charging Lien

Finding the lien valid, the Court next turns to how much of the charging lien is enforceable. The charging lien should be fixed at "the fair and reasonable value of the services rendered, determined at the time of the discharge and computed on the basis of quantum meruit." *Stair v. Calhoun*, 722 F. Supp. 2d 258, 268 (E.D.N.Y. 2010).  "[T]he determination of the reasonable value of the attorney's services is a matter within the sound discretion of the trial court," *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 149 (2d Cir. 1998) (citation omitted), and the Court of Appeals has instructed that "[a] charging lien, although originating at common law, is equitable in nature, and the overriding criterion for determining the amount of a charging lien is that it be 'fair.'" *Sutton v. N.Y. City Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006) (internal citations omitted).

In assessing the amount of a charging lien on a quantum meruit basis, a court should consider: (1) "the difficulty of the matter"; (2) "the nature and extent of the services rendered"; (3) "the time reasonably expended on those services"; (4) "the quality of performance by counsel"; (5) "the qualifications of counsel"; (6) "the amount at issue"; and (7) "the results obtained (to the extent known)." *Sequa*, 156 F.3d at 148; *see also Antonmarchi v. Consol. Edison Co.*, 678 F. Supp. 2d 235, 242 (S.D.N.Y. 2010).

Intervenor seeks to enforce the lien for $67,762.70.  (Compl. ¶ 49.)  In the retainer agreements, Plaintiff and Intervenor agreed to hourly fees instead of a fee based on a percentage

of recovery.  (*Id.* ¶¶ 10–11, 22.)  Intervenor pleads that Plaintiff did not pay charges accrued under the retainer agreements "beginning partway through the Impartial Hearing . . . and continuing through the end of the representation."  (*Id.* ¶ 30.)  Intervenor submitted two billing statements dated December 4, 2017 for the Court's consideration.[3]  (*See* Exhibits 1 & 2 to Int.'s Opp. ("December 4, 2017 Billing Statements"), ECF No. 133.)

Plaintiff asserts that the Complaint-in-Intervention fails to allege the charging lien is fair and reasonable and that "each of the relevant factors leads to the conclusion that Prior Counsel's lien should be valued at zero."  (Pl.'s Mem. at 21–22.)  Plaintiff contends that the difficulty of the matter weighs in favor of Plaintiff because "this was an administrative hearing that parents often pursue without any counsel at all" and that the relevant record could be obtained by Plaintiff *pro se*.  (*Id.* at 22.)  Further, Plaintiff criticizes the quality of Intervenor's "inadequate" performance, noting that Intervenor "lost everything" and "for reasons that are unclear, [Intervenor] expended an extraordinary and unreasonable 18 separate days in an administrative hearing."  (*Id.*)  Notably, Plaintiff says it is not fair and reasonable that Intervenor asserts a lien for over $67,000 after Plaintiff already paid Intervenor $110,000 to pursue a relief where only $30,000 was at stake. (*Id.*)

The Court has carefully reviewed Intervenor's December 4, 2017 Billing Statements and considered the relevant factors in assessing the amount of lien to enforce on a *quantum meruit* basis.  The Court agrees with Plaintiff and finds that Intervenor's attempt to collect an additional $67,762.70 for her unfruitful performance in the administrative proceedings to be unreasonable.

For the first three factors—difficulty of the matter, nature and extent of services rendered, and time reasonably expended on those services—the Court agrees with Plaintiff that IDEA

---

[3] The December 4, 2017 Billing Statements list only dates and the fee amounts charged.  The statements lack particularized detail with respect to the nature of the services provided.  *See Ramgoolie*, No. 16-CV-3345 (VEC)(SN), 2020 WL 1989292, at 5 ("Courts may reduce an attorney's requested fees when the billing entries are vague and do not sufficiently demonstrate what counsel did.").

administrative proceedings do not require attorney representation.  However, as both Parties noted, Intervenor prepared for and conducted the impartial hearing for eighteen dates spanning about seven months of 2014.  The Court questions the necessity of having eighteen separate hearings but concludes that Intervenor likely invested professional time and effort into preparing for and representing Plaintiff on the eighteen different occasions, on top of preparing and filing submissions.  The Court finds the first three factors to weigh slightly in Intervenor's favor.

However, as to the remaining four factors—quality of performance by counsel, qualifications of counsel, amount at issue, and results obtained—the Court finds these factors weigh heavily in Plaintiff's favor.  It is undisputed that Intervenor's efforts in the administrative proceedings resulted in full denials of relief by the Impartial Hearing Officer and by the State Review Officer, or as Plaintiff describes, "she lost everything," (Pl.'s Mem. at 22).  The Court understands Plaintiff's frustration—particularly because Plaintiff was able to successfully obtain a reversal of the Office of State Review decision in federal court *pro se*.  After examining the Parties' submissions, the Court has serious doubts about the effectiveness and efficiency of Intervenor's representation.  Intervenor has represented to this Court that Plaintiff was charged a total of $105,600.72 for billed hours and expenses with an additional $20,194.89 in interest for the proceedings before the Impartial Hearing Officer, and a total of $14,000.00 for billed hours and expenses with an additional $12,733.77 in interest for the proceedings before the Office of State Review.  (ECF No. 126.)  Per the Court's calculations, Intervenor has represented that she has charged Plaintiff a total of over $150,000.  Intervenor represents that Plaintiff has paid $82,312 of these charges, (*id.*), while Plaintiff maintains she has paid $110,000[4], (Pl.'s Mem. at 3, 22; Pl.'s

---

[4] Plaintiff represents that Intervenor was compensated at a total of $110,000, which includes fees paid to Gina DeCrescenzo for her services rendered in the underlying administrative proceeding while she worked at a prior firm.  (*See* Declaration of Connie Avaras In Support of Plaintiff's Motion to Dismiss the Complaint in Intervention And to Reject the Charging Lien, ECF No. 128 ¶ 7; Pl.'s Reply at 9.)

Reply at 1, 10).  But, as Plaintiff notes and Intervenor does not dispute, only a total of $30,000 of tuition was at stake in the administrative proceedings.  (Pl.'s Mem. at 3.)  The Court finds the amount charged to Plaintiff grossly outweighs the amount at issue.  This is particularly unreasonable in light of the unfavorable results that counsel obtained despite holding herself out to be well-versed in IDEA law.  Since Plaintiff has paid nearly, if not more, than triple the amount at issue, the Court finds that Intervenor has already been adequately, and likely overly, compensated for her time and efforts in creating the underlying administrative record.  *See 520 East 72nd Commercial Corp. v. 520 East 72nd Owners Corp.*, 691 F. Supp. 728, 739 (S.D.N.Y. 1998), *aff'd*, 872 F.2d 1021 (2d Cir. 1989) (reducing award of *quantum meruit* recovery after questioning attorney's demand of $375,000 for services for a procedure which would yield only $2,000 annual benefits to clients).  The Court finds that these factors weigh against enforcing Intervenor's lien for the amount requested.

"Ultimately, because a charging lien is equitable nature, 'the overriding criterion for determining the amount of a charging lien is that it is fair.'"  *Margolies v. Cty. Of Putnum N.Y.*, No. 09 CIV. 2061 RKE GAY, 2011 WL 721698, at *1 (S.D.N.Y. Feb. 23, 2011) (quoting *Sutton v. New York City Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006)).  For the equitable reasons set forth above, the Court exercises its discretion and determines the Intervenor has received more than adequate compensation for her services such that she is entitled to receive a monetary award of zero dollars in the enforcement of her Section 475 charging lien.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Dismiss the Complaint-in-Intervention is DENIED.  The Court finds that Intervenor's Section 475 charging lien is validly asserted over Plaintiff's settlement funds from the instant action.  Since Intervenor has already been more than adequately compensated for her services, the Court fixes Intervenor's lien at the value of zero dollars.  The Clerk of Court is respectfully directed to terminate the motion at ECF No. 127.

Dated:   November 8, 2021                                          SO ORDERED:
         White Plains, New York

                                               _____
                                                       NELSON S. ROMÁN
                                                   United States District Judge